NATIONAL PIPE LINE CO. v. UNITED STATES.

No. 43658.

Court of Claims.

Feb. 1, 1943.

Meredith M. Daubin, of Washington, D. C. (Homer L. McCormick, of Washington, D. C., on the brief), for plaintiff.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The question is whether plaintiff was compelled to pay a larger tax than it justly owed under Section 731 of the Revenue Act of 1932, 47 Stat. 169, 275, 26 U.S.C.A. Int.Rev.Acts, page 636. That section imposed a tax on the transportation of oil by pipe line. Its portions relevant here are as follows:

"(a) There is hereby imposed upon all transportation of crude petroleum and liquid products thereof by pipe line originating on or after the fifteenth day after the date of the enactment of this Act * * *—

"(1) A tax equivalent to 4 per centum of the amount paid on or after the fifteenth day after the date of the enactment of this Act for such transportation, to be paid by the person furnishing such transportation.

"(2) In case no charge for transportation is made, either by reason of ownership of the commodity transported or for any other reason, a tax equivalent to 4 per centum of the fair charge for such transportation, to be paid by the person furnishing such transportation.

"(3) If (other than in the case of an arm's length transaction) the payment for

transportation is less than the fair charge therefor, a tax equivalent to 4 per centum of such fair charge, to be paid by the person furnishing such transportation.

"(b) For the purposes of this section, the fair charge for transportation shall be computed—

"(1) from actual bona fide rates or tariffs, or

"(2) if no such rates or tariffs exist, then on the basis of the actual bona fide rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or

"(3) if no such rates or tariffs exist, then on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

The applicable regulation [1] was as follows:

"Art. 28. * * *

"Where no tariffs have been published, the fair charge will be determined on the basis of the ordinary or customary charge for like or similar services. If no reasonable basis of comparison can be found, a full statement of the facts surrounding the particular movement must be submitted to the Commissioner for his guidance and assistance in determining a fair charge. * * *

"From information available the Commissioner will determine what constitutes a fair charge for the purpose of this tax in respect of the particular movement under consideration."

Plaintiff transported oil from wells near two refineries owned by its parent company, National Refining Company, and made no charge for the service, hence it was necessary to fix the hypothetical charge which should be the basis for the tax by the methods provided in subdivision (b), clauses (2) or (3) of the section, and adverted to in the quoted regulation.

The period in question was from June 20, 1932 to February 29, 1936. Plaintiff paid taxes on the basis of a charge of 21 cents per barrel for transportation to its Findlay, Ohio, refinery, and 17 cents for transportation to its Marietta, Ohio, refinery. It used those figures because under the Revenue Act of 1918, Section 501, subdivision (d), 40 Stat. 1057, 1103, which contained language similar to that of subdivision (b) of Section 731 of the Revenue Act of 1932, supra, the Commissioner had determined those to be the reasonable charges for the service.

The Commissioner, however, for the period here in question, applied the rates charged by two other pipe line companies which operated as common carriers in the vicinities of plaintiff's operations. The Buckeye Pipe Line Company charged 31.26 cents per barrel in both the Findlay and the Marietta neighborhoods in Ohio. The Eureka Pipe Line Company, operating in West Virginia in the neighborhood where plaintiff operated, charged 30 cents down to August 10, 1932, and 31.26 cents thereafter. The tariffs of both these companies were on file with the Interstate Commerce Commission. Plaintiff paid the higher taxes and filed a timely and adequate claim for refund which was rejected. This suit followed.

The Commissioner held, as we have seen, that plaintiff's services and those of the Buckeye and Eureka Companies in their respective areas were "like services," within the meaning of clause (2) of subdivision (b) of section 731 quoted above. Plaintiff contends that the services were not "like" plaintiff's, and that therefore the Commissioner should have determined under clause (3) what would have been a "reasonable charge" for plaintiff's services; that if he had done so he would have found that the charges of 21 cents and 17 cents, respectively, upon the basis of which plaintiff first paid its taxes, were reasonable charges. Plaintiff offered evidence of rates charged for "gathering" services in Pennsylvania, Michigan, and Kentucky, which were lower than the rates plaintiff used when it computed its tax.

Plaintiff urges that its services, and those of Buckeye and Eureka, were unlike in that plaintiff performed only a "gathering" operation, while Buckeye and Eureka gathered, transported, stored, and turned their customers' oil over to connecting interstate carriers, all for the published charge. The fact that the operations of Buckeye and Eureka were much more extensive than plaintiff's is shown in Findings 9–14. Plaintiff says that if it had actually been paid 31.26 cents per barrel for the service it rendered, it would have made an annual return of some 150% on its investment.

---

[1] United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

It is true that under the tariff rates customers of Buckeye and Eureka could, if they desired them, obtain services much more extensive than those rendered by plaintiff. But it is also true that Buckeye and Eureka, in the neighborhoods where plaintiff operated, performed for their customers the exact services which plaintiff performed, if those were the services their customers called for. They gathered from well owners' tanks and transported the oil directly to the refineries of plaintiff's parent company. If these well owners' tanks were within the comparatively short distances which were also traversed by plaintiff's lines, they got for the published rate the same transportation that plaintiff gave its parent company and no more. Those who used the facilities of Buckeye and Eureka, and whose wells were farther from the market than the limits of plaintiff's lines, got more transportation. The customers of Buckeye and Eureka were, on the average, much farther from their markets, hence they received, on the average, much more transportation than plaintiff furnished its sole customer. The permitted tariff rates of those companies, if they were reasonable, were so only "on the average." If that is true, then those rates would have been unreasonably high, if the only services available had been the short hauls such as plaintiff made, and there had been no long hauls to balance them.

■ Under the statute, however, the question for the Commissioner was not whether the charges of Buckeye and Eureka were reasonable charges for the kind of services plaintiff rendered. It was merely whether these companies did, at arm's length, charge these rates for services like those of plaintiff. Since he reasonably concluded that they did so in fact, and for identical services, his inquiry ended there.

We do not mean to say that in every conceivable situation it would be necessary, or proper, to apply to a small operator the rates charged by a more extensive operator for the kind of service rendered by the smaller operator. The rates charged by the more extensive operator might just happen, because of their generality, to include a service so small that it obviously would not

be worth the applicable rate. In most such cases, the tariff rate would be of little practical importance as to the small service because there would be few customers who would use the service. Suppose, for example, a trolley car company had a fare of ten cents for a ride, however short or long, on its ten miles of lines. The fare for two blocks would then be ten cents, but practically no customers would take so short a ride. Suppose a factory owner in the same city established a free trolley service for his workmen, the ride being for a distance equal to two blocks. A tax on trolley transportation comparable to the one on transportation of oil here in question, and containing a provision such as Section 731(b) (2) and (3), would probably not be properly assessable against the factory owner on the basis of a ten cent fare.

Nor do we mean to say that plaintiff's situation does not approach the peculiar situation just described. But we think it does not reach it, or at least reach it so conclusively that the Commissioner of Internal Revenue was without power to make the decision he made. As we have seen, subdivision (b) (2) of the section says: " * * * then on the basis of the actual bona fide rates or tariffs of other pipe lines for like services, as determined by the Commissioner."

■ Here Buckeye and Eureka were furnishing the exact service furnished by plaintiff, and all owners of oil in the area covered by plaintiff, who did not, like plaintiff, have their own lines leading to a refinery, and who wished to have their oil transported to a refinery, were obliged to use the service and pay the rates. The rates were, therefore, not a mere hypothetical charge for a service that would seldom be called for. They were the rates actually in effect for a service that had to be used. We think, therefore, that the Commissioner did not exceed his power in determining that the services of Buckeye and Eureka were "like services" to those of plaintiff, and that plaintiff's tax should be computed on the rates charged by those companies.

The petition will be dismissed. It is so ordered.